# EXHIBIT B

#2034

STATE OF UTAH
ADULT PROBATION AND PAROLE
660 SOUTH 200 EAST, FIRST FLOOR
SALT LAKE CITY, UTAH 84111

PRESENTENCE INVESTIGATION REPORT

SENTENCING DATE: December 2, 1980

| JUDGE | Dean Conder | Third District | COURT |
|---|---|---|---|
| | Salt Lake | Salt Lake | UTAH |
| | (CITY) | (COUNTY) | |

Gwen Rowley                    INVESTIGATOR

NAME: HOUSE, Paul Gregory
ADDRESS: 3728 South 9th East, Apt. 12
         Salt Lake City, Utah
BIRTHDATE: 12/19/61    AGE: 18
BIRTHPLACE: Cornell, Oklahoma
LEGAL RESIDENCE: Utah
MARITAL STATUS: Single

COURT CASE NO.: CR 80-664
CO-DEFENDANTS: None
OFFENSE: Aggravated Sexual Assault I
SENTENCE: 5 - life USP
PLEA: Guilty      DATE: 11/7/80
DEFENSE ATTORNEY: Robert VanSciver

INFORMATION:

COUNT I

Aggravated Sexual Assault (Forcible Sodomy), a First Degree Felony, at 4283 Bennion Dr., on or about July 26, 1980, in violation of Title 76, Chapter 5, Section 405, Utah Code Annotated, 1953 as amended in that the defendant Paul Gregory House compeled submission to the forcible sodomy by the threat of death, or serious bodily injury to be inflicted imminently on Julie Russell.

COUNT II

Aggravated Sexual Assault (Rape), a First Degree Felony, at 4283 Bennion Dr., on or about July 26, 1980, in violation of Title 76, Chapter 5, Section 405, Utah Code Annotated, 1953 as amended in that the defendant Paul Gregory House compeled submission to the rape by the threat of death, or serious bodily injury to be inflicted imminently on Julie Russell.

COUNT III

Aggravated Sexual Assault (Forcible Sodomy), a First Degree Felony, at 4283 Bennion Dr., on or about July 26, 1980, in violation of Title 76, Chapter 5, Section 405, Utah Code Annotated, 1953 as amended in that the defendant Paul Gregory House compeled submission to the forcible sodomy by the threat of death, or serious bodily injury to be inflicted imminently on Julie Russell.

COUNT IV

Aggravated Sexaul Assault (Rape), a First Degree Felony, at 4283 Bennion Dr., on or about July 26, 1980, in violation of Title 76, Chpater 5, Section 405, Utah Code

IFORMATION Continued:

>Gregory House compeled submission to the rape by the threat of death, or serious bodily injury to be inflicted imminently on Julie Russell.

OFFENSE:

>A. OFFICIAL VERSION: Please find a copy of the Salt Lake County Sheriff's Office arresting officer's report attached. A taped interview with the victim is also attached.
>
>PROBABLE CAUSE STATEMENT: Affiant bases this information upon the following:
>(1) Upon a statement made to him by Julie Russell who stated that on July 26, 1980 in the early morning hours, the defendant, Paul Gregory House, an individual indentified by her through a photo spread, had sexual intercourse with her twice against her will while he held her at knifepoint, and also that the defendant forced her to touch his genitals twice while he held a knife to her throat and that the following acts took place over a period of approximately three hours at 4283 Bennion Drive; and that all four sexual acts were submitted to by Julie Russell because defendant threatened her with death and held her at knifepoint.
>
>B. PLEA BARGAIN: It is the understanding of this office that the defendant was allowed to plead guilty to Count I and the other three counts were dismissed. Another similar case was also filed with the County Attorney's Office. This also involved Aggravated Sexual Assault (Forcible Sodomy) and Aggravated Sexual Assault (Rape) charges. That case was also dismissed when the defendant pleaded guilty. These two incidents were unrelated and occurred one day apart. A copy of the arresting officer's report on the other case is also attached for the Court's information.
>
>C. DEFENDANT'S STATEMENT: During the Presentence Investigation the defendant was requested to write his version of the offense. The following is taken verbatim from that handwritten offense:
>
>"I was walking down the road at about a quarter to 12 when Marie stopped me on the street. We sat in front of her house and talked for a while. Then she asked me to smoke a joint with her. We walked down to a friend of mine's house but nobody was home. We then jumped his fence and went into the backyard to get high. We sat in the backyard and got high and talked for a long time. We made love after that and talked for a little while longer and then I walked her home and I went home."
>
>During the Presentence Investigation the defendant made the following statements:
>
>"Maria is 17 years old. I've known her three or four years. I've never taken her out, we're just friends. I was coming from the store and I had gone to get cigarettes. She was sitting in front of her house when I went walking by. She had the marijuana. We went to my friend's house so that we could have some privacy to smoke the joint. We were there about one-half an hour before we made love. I made love to her once before a year ago. We were at a party. I did not force her or threaten her. I don't know why she is calling it Rape. About four or five days later the cops came to talk to me. She said I forced her to make love to me with a knife. I have not talked to her since."
>
>A taped interview, conducted with the defendant, is also attached for the Court's information.

PRIOR RECORD:

>A. JUVENILE: According to the records of the Utah Juvenile Court the defendant was never referred there.

PRESENTENCE INVESTIGATION REPORT
HOUSE, Paul Gregory
Page Three

PRIOR RECORD Continued:

B. ADULT: According to the records of the Utah Bureau of Criminal Identification, the Salt Lake County Sheriff's Office, and the FBI the defendant has the following adult arrest record:

| ARRESTING AGENCY | DATE | OFFENSE | DISPOSITION |
|---|---|---|---|
| SO Salt Lake | 6/8/80 | Carrying a Concealed and Dangerous Weapon<br>Criminal Trespassing | |
| SO Salt Lake | 7/29/80 | Two Counts Aggravated Assault | * Present case |

C. DEFENDANT'S VERSION: During the Presentence Investigation the defendant told this investigating officer that when he was 16 years old he was arrested for Shoplifting. He also admtited that he was arrested for Carrying a Concealed Weapon in June of 1980. That concealed weapon was a knife. According to the defendant that case is still pending. He believes, however, that it will be dismissed.

The defendant was in jail for 17 days after his arrest on this offense. His parents were finally able to put up a property bond.

D. PROBATION/PAROLE HISTORY: It does not appear that the defendant has ever been on probation.

BACKGROUND INFORMATION:

Paul Gregory House was born 18 years ago to James and Joyce House in Cornell, Oklahoma. When he was a year and a half old he moved with his family to Los Angeles, California. When the defendant was seven years old he moved with his family to Salt Lake City. Salt Lake City has been his home ever since. Greg House admitted that he started having problems getting along with his parents when he was in junior high school. He mostly has trouble getting along with his father. He claims that he has always been close to his mother. He does not feel, however, that he was ever abused. His parents were not happy together but did not receive a divorce until a few months ago. Greg House does not feel that that divorce has had an effect on him. Neither one of his parents have remarried.

The defendant's father works as a mechanic for Western Airlines. His mother works as a secretary at Alpa Corporation. According to the defendant money was not a problem for him as he was growing up. The defendant still has problems getting along with his father but described his relationship with him as "friendly". He still is very close with his mother. Both of his parents believe his version of the offense and are being very supportive.

MARITAL HISTORY:

Greg House claims that he has never been married and that he does not have any children.

CURRENT SITUATION:

For the last three weeks the defendant has been living with his mother in an apartment that she is renting. Prior to that he was living with his father. According to the defendant his father kicked him out because he refused to do some vacuuming. The defendant has only lived away from his parents on one occasion. For three and one-half months, in 1979, the defendant lived with relatives in California. The defendant is currently unemployed.

EDUCATION:

Greg House was attending Granite High School. He claims he was kicked out during the 11th grade

EDUCATION Continued:

was not interested in school. He next attended Granite Alternative. He was also kicked out of that school. He regrets that he did not finish high school. The defendant was asked if he would like to obtain any further education. He replied, "I want to get it but I want to join the Army too."

HEALTH:

    A. PHYSICAL: Paul House described his current physical health as "perfect". He is not currently taking any medication.

    B. EMOTIONAL: Paul House feels that he has "fine" emotional health. He claims that there is nothing other than this offense bothering him. He admitted that he was first bothered when his parents told him that they were getting a divorce but he has since decided that it is a good idea for them. The defendant also stated that he was extremely bothered that his dog died when he was in the 5th grade.

    According to the defendant he does not have a girl friend. He has not been dating lately because he has been too busy going to Court and he hasn't felt like it. He spends his spare time watching TV.

    The defendant does not have anything he would like to talk to a counselor about. In approximately January of 1980 the defendant began receiving counseling from Dr. Don McKean at the Cottonwood Hospital. The defendant explained that his parents were seeing Don McKean for marriage counseling and felt that Greg would benefit from the counseling also. He saw Don McKean once a week for approximately three months and then he stopped going. After the defendant was arrested on this offense he began seeing this counselor again. The defendant explained that his lawyer told him to start getting counseling again. He then attended counseling for approximately a month and a half. He quit going at that time. He stated, "I quit because I thought my Court was up." The defendant does not plan to continue receiving counseling from Dr. McKean.

HABITS:

    A. ALCOHOL: Paul House drinks approximately two six-packs of beer on a weekend night. He claims that he doesn't like to drink hard liquor. He also claims that he never gets drunk. The last time he was drunk was last New Years Eve when he drank hard liquor. He has been drinking since he was a Junior in high school and feels that he has always been drinking at the same rate. He likes to drink while he watched TV. According to the defendant he had not been drinking when either one of these offenses occurred. The defendant cannot think of any problems that alcohol has caused in his life. He does not think that he has a problem with alcohol or that he is an alcoholic.

    B. ILLEGAL DRUG USAGE: Paul House admitted that he has used marijuana, cocaine, speed, and LSD. He stated that he has never used heroin. He claims that it has been one year since he used any LSD, two years since he used any speed, and four months since he used any cocaine. He admitted, however, that he uses marijuana daily. He claims that he does not spend any money on marijuana and that his friends always give it to him. He admitted that marijuana has caused some problems with his family. He also admitted that he was using marijuana when both of these offenses occurred. He does not feel, however, that it made any difference.

EMPLOYMENT:

From June 1979 to September 1979 the defendant worked as a dishwasher at Sinaloa Restaurant in Bakersfield, California. He was earning $3 an hour. He left that job when he returned to Utah. For three weeks in January of 1979 the defendant worked as a laborer at Chris and Dicks. He quit that job because of problems with the boss. For one month, some time in 1978, the defendant worked as a laborer at Homestead Farms Condominium. He quit because the job made him too tired. For

PRESENTENCE INVESTIGATION REPORT
HOUSE, Paul Gregory
Page Five

EMPLOYMENT Continued:

two months, also sometime in 1978, the defendat worked as a dishwasher at Godfather's Pizza. He quit that job because he didn't like his boss.

FINANCIAL SITUATION:

Paul House does not currently have a source of income. Sometimes he is able to get spending money from his mother. The defendant complained that his father has been pressuring him to get a job since he turned 18. The defendant does not have to pay money to his mother for rent. He does not own a car. He claims that he does not have any debts. His father is paying for his attorney.

FURTURE PLANS:

Greg House would like to join the service. He wants to do this so he can get away from Utah. If the military will not take him, he is considering applying for the Peace Corps.

DEFENDANT'S RECOMMENDATION FOR SENTENCE:

This investigating officer asked the defendant what he feels the Judge should do at sentencing. It is Greg House's understanding that the prosecuting attorney has recommended the Sex Offenders Program at the Utah State Hospital. Greg House feels that this is okay. He stated, "It will keep my out of prison. My attorney says the program is okay."

COLLATERAL CONTACTS:

A collateral contact was made with the defendant's father, James House. James House stated, "He made a mistake when he talked to the police. He should have had an attorney present. He admitted that he made love to Maria. He also admitted that he made love to Julie Russell. She thought that he was a women. She picked him up on State Street.

"We always had trouble keeping him in school. He's a very smart kid but he hates authority. We've never worried about sexual problems in the past. We worry about him because he has no drive or ambition. He sits around the house a lot. I've been trying to get him to get a job. He won't even take care of himself or do any work at home. His mother says he can't stay with her indefinitely. I would not let him come back into my home unless he gets a job and apologizes to me for his behavoir.

"I sent Greg to Don because he had no motivation. I've always thought he needed help so the State Hospital would be good for him."

A collateral contact was made with Don McKean, the defendant's counselor. Don McKean verified that he had been seeing Greg House off and on for the last ten months. He began seeing Jim House, the defendant's father, because of marital problems. He then started seeing Greg House because of motivation problems. Don McKean was extremely surprised when the defendant was arrested on sexual offenses. Don McKean feels that he has some expertice with sexual problems but did not see any tendencies of this kind in the defendant.

After Don McKean was made aware of the details in this case he decided that the defendant could best be served by entering the Sexual Offenders Program at the Utah State Hospital. Don McKean has prepared an evaluation and recommendation for the Court. A copy of that evaluation is attached to this Presentence Investigation Report.

Case 3:96-cv-00883   Document 348-2   Filed 01/18/08   Page 6 of 7   PageID #: 81

PRESENTENCE INVESTIGATION REPORT
HOUSE, Paul Gregory
Page Six

EVALUATIVE SUMMARY AND PROBATION PLAN:

Paul Gregory House is before the Court on the first degree felony offense of Aggravated Sexual Assault. The defendant pleaded guilty to Count I of an Information containing four counts. The other three counts were dismissed. A similar case involving two counts of Aggravated Sexual Assault was also dismissed when the defendant pleaded guilty. These offenses involve two occasion when the defendant forced young women to have intercourse with him at knifepoint.

The defendant was never referred to Juvenile Court. He has one prior arrest as an adult for Carrying a Concealed and Dangerous Weapon. This investigaing officer was unable to find a disposition on that offense.

The defendant is currently living with his mother and is unemployed. Until recently the defendant was living with his father. He was kicked out of his father's home because he would not participate in household chores. The defendant's father is very discouraged because the defendant lacks motivation. The defendant's father would like to see him enter the Sex Offenders Program at the State Hospital. The defendant told this investigating officer that he is prepared to enter that treatment program. The defendant's attorney also feels that this program would be good for the defendant. A doctor that the defendant has been seeing for the last ten months also made that recommendation. Because of all the recommendations for the treatment program at the Utah State Hospital, this investigating officer would also like to make that recommendation. The only question remaining is whether it should be on a straight commitment or as a 90-Day Evaluation.

Respectfully submitted,

GWEN ROWLEY, Investigator

APPROVED:

CLYDE MOCKLI, Supervisor

Sources of Information:
The defendant
Records of the Salt Lake County Attorney's Office
Salt Lake County Sheriff's Office
Utah Juvenile Court
Utah Bureau of Criminal Identification
FBI
Mr. James House, the defendant's father
Don McKean, the defendant's counselor

jj