IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PAUL GREGORY HOUSE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:96-cv-883 |
| | ) | Judge Mattice |
| RICKY BELL, Warden, | ) | CAPITAL CASE |
| | ) | |
| Respondent. | ) | |

**SUPPLEMENTAL BRIEF REGARDING RESPONDENT'S
MOTION FOR STAY OF JUDGMENT AND PETITIONER'S
MOTION FOR RELEASE PENDING APPEAL**

On February 28, 2008, this Court conducted a hearing on respondent's Motion for Stay of Judgment Pending Appeal [Doc. Entry No. 348] and petitioner's Motion for Release Pending Appeal.[1] [Doc. Entry No. 351] At the conclusion of the hearing, the Court requested supplemental briefing from the parties related to the proof presented at the hearing.

**Respondent's Motion for Stay of Judgment Pending Appeal**

Under Fed. R. App. P. 8(a), this Court has the authority to stay execution of its judgment to permit the respondent to pursue its appeal to the Sixth Circuit. A stay of the judgment is particularly appropriate here because the State of Tennessee would be irreparably injured by the prospect of choosing between pursuing its appeal and retrying House before its conclusion. *See also* Response to Petitioner's "Opposition to Respondent's Motion for Stay of Judgment Pending Appeal and

---

[1] The Court previously granted judgment in petitioner's favor and directed that his conviction and sentence be vacated unless the State of Tennessee commences a new trial within 180 days from the date the judgment becomes final. [Doc. Entry No. 346] Respondent appealed. [Doc. Entry Nos. 347, 350]

Motion for Release Pending Appeal," p. 2 [Doc. Entry No. 354]. Any harm claimed by House is mitigated by the Sixth Circuit's February 27, 2008, order granting respondent's request for expedited disposition of this matter.[2] [Order and Briefing Schedule attached as Collective Exhibit A] Moreover, it would be unreasonable to force the State to prepare for a new trial while its appeal is pending, not to mention the fact that a retrial would require appointment of new defense counsel, who must familiarize him or herself with the evidence in this case. A stay of the judgment is both appropriate and necessary under these circumstances.

**Petitioner's Motion for Release Pending Appeal**

In *Hilton v. Braunskill*, 481 U.S. 770 (1987), the United States Supreme Court instructed that the traditional factors governing the power of district and appellate courts to stay an order under Fed. R. App. P. 8 are also applicable to the determination of whether a successful habeas petitioner should be released pending appeal. Respondent has addressed these factors in earlier filings. [Doc. Entry Nos. 348, 354] In light of the proof at the evidentiary hearing, however, respondent submits additional considerations bearing on the release inquiry. Fed. R. App. P. 23(c) provides that a successful habeas petitioner be released pending review of that decision "unless the court or judge rendering the decision . . . orders otherwise." Because "the general standards governing stays of civil judgments should also guide courts when they must decide whether to release a habeas petitioner pending the State's appeal," *Hilton*, 481 U.S. at 776, "[t]he movant bears the burden of

---

[2]At the February 28 hearing, the Court questioned whether appeal proceedings could be completed within the 180-day period set forth in its December 20, 2007, judgment. That is highly unlikely given the current appeal schedule. However, briefing in the appeal is ongoing, and the Sixth Circuit's February 27 order demonstrates its recognition that expedited disposition is warranted. Under these circumstances and given its existing familiarity with this case, it is unlikely that the Court will unduly delay disposition upon submission of the case following oral argument in June.

2

proof." *See, e.g., Hayes v. City Univ.of New York,* 503 F.Supp. 946, 962 (S.D.N.Y. 1980) (citations omitted). Given the balance of considerations in this case, this Court should deny petitioner's motion for release.

*1. Irreparable Harm to the State if Petitioner is Released Pending Appeal*

The State of Tennessee risks irreparable harm if petitioner is released pending appeal because House poses a serious risk of flight. Although House contends that his medical condition negates any risk of flight, the proof at the February 28 hearing demonstrates otherwise. Dr. Madubueze Nwozo, House's treating physician, testified that House has the disease multiple sclerosis. As a result, he "has poor gait, poor balance" and cannot walk. [Hearing Tr. 19] Although he has some muscular weakness in his upper body, he does have the use of his arms and the ability to transfer in and out of his wheelchair. The disease has had no affect on House's concentration or memory, and his vision and hearing are "fine." [Hearing Tr. 20, 27] He consumes a normal diet and, although he began weekly injections of Beta Interferon approximately six weeks before the hearing, cessation of that treatment, in the doctor's opinion, would make no difference in his medical condition. [Hearing Tr. 21] In the two years that House has been housed at DeBerry Special Needs Facility in Nashville, his condition has remained the same. Although currently housed in a hospital setting, he does not require hospitalization, nursing home care, or even skilled nursing assistance. Indeed, aside from some assistance with personal hygiene, Dr. Nwozo opined that "every other thing I think he can do." [Hearing Tr. 22, 26] He is capable of living independently.

> Q.   [I]f a caregiver were to go to work or to be away, there would be no reason to hire a sitter, for example, he could be there by himself?
>
> A.   Yes.
>
> Q.   And function independently?

3

A. Yes

[Hearing Tr. 30]

He is fully capable of traveling by automobile, bus or airplane for long distances and would have no difficulty making travel arrangements by telephone. [Hearing Tr. 24-25] Indeed, Dr. Nwozo testified that, in his experience, it is not uncommon for disabled people to travel. [Hearing Tr. 26]

Although House contends that his physical condition limits his risk of flight, the testimony of Dr. Nwozo plainly shows that any limitation would be minimal. Far from demonstrating that House is a helpless invalid, the proof showed that he requires no specialized medical care, that he can function in a home setting, in large part, independently, and that he can travel long distances with few limitations. Given the severity of the sentence facing House regardless of the outcome of the instant appeal and the State of Tennessee's clear assertion that it will again seek the death penalty in the event of a retrial, the State of Tennessee cannot reasonably be assured of petitioner's appearance at future proceedings if he is released pending appeal.

*2. No Substantial Injury to the Petitioner if Release Pending Appeal is Denied*

The fact that House would not likely be granted bail under Tennessee law in connection with any retrial is directly relevant to the issue of harm to the petitioner if release pending appeal is denied. Indeed, denying House's request for release pending the State's appeal would not deprive him of *any* benefit that he would otherwise receive in absence of an appeal. At the February 28 hearing, District Attorney General Paul Phillips testified that, if the State is unsuccessful in its appeal to the Sixth Circuit, he will retry House and will again seek capital punishment. [Hearing Tr. 38] Further, in the opinion Mr. Phillips, because it is a capital case, it is unlikely that House would be released on bail pending retrial. [Hearing Tr. 38] This is fully in keeping with Tennessee law as

4

set forth in the Response to Petitioner's "Opposition to Respondent's Motion for Stay of Judgment Pending Appeal and Motion for Release Pending Appeal." [Doc. Entry No. 354]

Although House's counsel challenged the prosecutor's ability to secure a conviction in light of the Supreme Court's opinion, a review of the history of his case shows that the case against House remains strong. In 2004, eight members of the Sixth Circuit Court of Appeals concluded that "the case against House remains strong" despite new DNA evidence and allegations of a belated "confession" by the victim's husband. *House v. Bell*, 386 F.3d 668, 685 (6th Cir. 2004). Two years later, five Justices of the Supreme Court of the United States conceded that this was a "close" case and that many aspects of the State's case supporting an inference of guilt remained intact. *House v. Bell*, 547 U.S. 518, 553-54 (2006). Three Justices went so far as to say that "the case against House remains substantially unaltered from that presented to the jury." *Id*. at 566 (Roberts, C.J., dissenting). Significantly, *none* of the nine Supreme Court Justices accepted House's contention that the evidence established his innocence, and *none* advocated for immediate issuance of a writ of habeas corpus in light of the evidence presented in the federal evidentiary hearing.

The "strong" circumstantial evidence, which the Tennessee Supreme Court found "clearly" sufficient to support House's conviction — testimony placing House near the victim's body just prior to searchers' discovery of it, the damaging testimony of Donna Turner concerning House's whereabouts on the night of the murder, House's conflicting statements about his actions that night, and Laura Muncey's "earwitness" account of her mother's abduction — are still intact. Moreover, the serologic evidence presented in the evidentiary hearing in an attempt to undermine the bloodstain evidence against him has already been rejected by the District Judge to whom it was presented and is questionable at best in any event. *See* Response in Opposition to Petitioner's Motion for

5

Summary Judgment, Attachment 1, Affidavit of Ronald L. Singer ("Dr. Blake's conclusions regarding the source of the blood on the exhibit in question are without any scientific basis whatsoever."). [Doc. Entry No. 317]

The history of this case plainly demonstrates that reasonable jurists can, and still do, dispute the significance of additional evidence in light of proof presented to the jury at trial. Given this debate, counsel for respondent conceded at the hearing before this Court that she was unable to state that there is a "substantial likelihood" that the State will succeed in this appeal, particularly where no appellate court has yet considered the probative impact of the specific items at issue in House's *Brady* and ineffective assistance claims. Indeed, *neither* party in this case can legitimately claim that success in this appeal is substantially likely. However, given the severity of the sentence, the obvious incentive — and ability — of Paul House to flee given the difficult choice between a return to prison for execution of his sentence (if the State is successful on appeal) or a retrial for capital murder (if House is successful on appeal), and the Sixth Circuit's recent action in expediting appellate proceedings, the balance of factors clearly weighs in favor of a denial of his request for release at this time. This is particularly so where release pending appeal would be little more than a temporary furlough from State custody regardless of the outcome of the State's appeal. *See also Mohammed v. Reno*, 309 F.3d 95, 101 (2nd Cir. 2002) (stating that "we see considerable merit in the approach expressed by the District of Columbia Circuit: 'The necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other [stay] factors .'" (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir. 1977)). In essence, "'more of one [factor] excuses less of the other." *Mohammed,* 309 F.3d at 101

(citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991)).

    *3. The Public Interest*

The State of Tennessee has a strong interest in defending the criminal conviction of Paul House. It also has an interest in protection from violent criminal offenders. Although House's medical condition does limit his direct physical threat to the public, his criminal background — which, under Tennessee law, in itself aggravates House's offense to capital case status — militates against his release. House pled guilty in 1981 to aggravated sexual assault in the State of Utah, a first degree felony for which he received an indeterminate sentence of five years to life imprisonment. He was on parole for that offense less than four months when he committed capital murder in Tennessee, and his prior conviction was one basis on which the jury imposed a death sentence. House pled guilty in 1984 to attempted escape from the Utah Department of Correction, a third degree felony in that state. House's criminal history is uncontroverted and bears directly on this Court's determination of his request for release. *See* Motion for Stay of Judgment Pending Appeal [Doc. Entry No. 348], Exhibits A and B. There is a "strong public interest that the sentence of a dangerous felon in accordance with state law not be altered in any way until a federal appellate court passes upon his constitutional challenge." *Sailor v. Scully*, 666 F. Supp. 50, 53 (S.D.N.Y. 1987).

## CONCLUSION

The Court should stay its judgment and deny petitioner's request for release pending appeal.

>Respectfully submitted,
>
>ROBERT E. COOPER, JR.
>Attorney General & Reporter
>
>
> /s/ Jennifer L. Smith
>JENNIFER L. SMITH
>Associate Deputy Attorney General
>P.O. Box 20207
>Nashville, Tennessee 37202-0207
>(615) 741-3487

## CERTIFICATE OF SERVICE

I certify that the foregoing motion was filed electronically on this the 12th day of March, 2008. A copy of the document will be served via the Court's electronic filing process on: Stephen M. Kissinger, Federal Defender Services of East Tennessee, Inc., 530 South Gay St., Ste 900, Knoxville, TN 37902; and Michael S. Pemberton, Daniel, Pemberton, Scott & Scott, 9539 Kingston Pike, Knoxville, TN 37922

/s/ Jennifer L. Smith<br>
JENNIFER L. SMITH<br>
Associate Deputy Attorney General